UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHRIS ALLEN MILLER, ) | |
| ) | C/A No.: 4:13-cv-1927-TER |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN,[1] ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District on consent of the parties. 28 U.S.C. § 636(c).

## I.  PROCEDURAL HISTORY

    The Plaintiff filed an application on April 13, 2010 for SSI, alleging disability since March 15, 2009. A hearing was held by an Administrative Law Judge ("ALJ") on November 10, 2011. The ALJ found in a decision dated February 16, 2012, that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review. Plaintiff filed this action on July 15, 2013, in the United States District Court for the District of South Carolina.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

## II.  INTRODUCTORY FACTS

Plaintiff was born on December 29, 1967, and was 42 years old on the date the application was filed. (Tr. 25). Plaintiff has a high school education and past relevant work experience as a floor department manager and a flooring installer. (Tr. 25). In his brief, Plaintiff indicates that he alleges disability due to the following impairments: lower extremity swelling, lumbar radiculopathy, angina, diabetes, hiatal hernia, anxiety, nausea and vomiting, Hepatitis C, abdominal pain, pancreatitis, chronic pain, tingling, both feet, low back pain, sciatica, lumbar disc disease, numbness and tingling (hands), hands, right knee problems, arthritis, hypertension, lumbar HNP, neuritis or radiculitis, migraines, hydrocephalus/headaches/vision loss.

## III.  THE ALJ'S DECISION

In the decision of February 16, 2012, the ALJ found the following:

1. The claimant has not engaged in substantial gainful activity since April 13, 2010, the application date (20 CFR 416.971, *et seq.*).

2. The claimant has the following severe impairments: status post three back surgeries, hepatitis C and GERD (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, I find that he can stand, sit or walk for 6 hours in an 8-hour workday. I also find that he can lift 20 pounds occasionally and 10 pounds frequently. I further find that he can frequently balance, but can only occasionally stoop, kneel, crouch, crawl and climb ramps/stairs. He can never climb ladders, ropes or

    scaffolds. Finally, I find that he must avoid concentrated exposure to hazards.

5. The claimant is unable to perform any past relevant work. (20 CFR 416.965).

6. The claimant was born on December 29, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2010, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-27).

  The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802

(4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§ 404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R.

§ 404.1503(a).  Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82-62.  The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act.  42 U.S.C. § 423 (d)(5).  He must make a prima facie showing of disability by showing he was unable to return to his past relevant work.  Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  Id. at 191.

## IV. ARGUMENTS

The Plaintiff argues that the ALJ erred in his decision. Specifically, Plaintiff raises the following arguments in his brief, quoted verbatim:

> A. The ALJ errs in finding there is no medical evidence for pancreatitis or heart problems.
>
> B. The Administrative Law Judge failed to consider the various factors set forth in 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 404.927(d) in evaluating the opinion of the treating physician.
>
> C. The ALJ erroneously requires objective tests for pain complaints.

5

      D.      When does the Administration contend the Plaintiff could work?

(Plaintiff's brief, p. 4).

In his initial issue, Plaintiff essentially argues that the Commissioner's step two finding is not supported by substantial evidence. The Commissioner disagrees and posits that the there is substantial evidence to support the ALJ's determination that Plaintiff's heart and pancreas impairments were not medically determinable impairments. For the reasons that follow, the court agrees that the ALJ's determination at Step Two of the sequential process is unsupported by substantial evidence, which impacts the remaining steps of the sequential process. Therefore, the court addresses this issue first.

## V. MEDICAL RECORDS AND OPINIONS[2]

(A) <u>Back Impairment</u>

Prior to the relevant period,[3] Plaintiff underwent surgery on in 2004 and 2009 (Tr. 448, 718). An MRI after his second surgery showed moderate degenerative disc disease at L5-S1, and a disc protrusion at L4-5 without clear impingement. (Tr. 461). On March 28, 2010, Plaintiff's back was not tender, and he had a normal range of motion. (Tr. 532).

On July 12, 2010, an MRI was performed of Plaintiff's lumbar spine. (Tr. 599). The MRI identified nerve impingement at the S1 nerve root and a disc protrusion at L4-5 with root contact without obvious impingement. (Tr. 600). Plaintiff underwent a third surgery on August 17, 2010. (Tr.

---

[2]This general discussion of the medical records is not exhaustive, but primarily for background purposes. A number of additional records are discussed in addressing Plaintiff's step 2 argument, <u>infra</u>. On remand, the ALJ should consider all relevant medical records.

[3]While Plaintiff's alleged onset date was March 15, 2009, SSI benefits cannot be paid until the month after an application is filed and all other requirements for eligibility are met. 20 C.F.R. §416.335.

621-22). Post-surgery records indicated that Plaintiff took post-op well, and walked without assistance. (Tr. 610). He was also informed that he could gradually return to normal activities, and short, frequent walks were good for his recovery. (Tr. 611). At a follow-up appointment two weeks later, Stephen R. Gardener, M.D., noted that Plaintiff's gait and motor strength were normal. (Tr. 649). On September 27, 2010, Dr. Gardener noted that Plaintiff had a normal gait and motor strength, but that he might have to undergo myelography. (Tr. 647).

Post-surgery, physical examinations of Plaintiff were unremarkable. On October 7, 2010 Plaintiff had a normal range of motion and strength in all his musculoskeletal systems. (Tr. 665). December 5, 2010, Plaintiff denied back pain (Tr. 675), his back was not tender (Tr. 676), and he had a normal alignment in his spine.  However, in November of 2011, Plaintiff reported that his back pain was worse (Tr. 773).

(B) Heart Impairment

Chest x-rays performed on December 27, 2009 and July 6, 2010 were unremarkable. (Tr. 501, 601). On April 8, 2010, Plaintiff presented to Baptist Easley Hospital ("Easley"), complaining of dull chest discomfort and swelling in his ankle. (Tr. 654). An echocardiogram revealed that he had mildly decreased left ventricle function and ejection fraction. (Tr. 652). A physical examination was unremarkable other than trace swelling. (Tr. 654). A stress test was unremarkable, and Plaintiff's ejection fraction was 53%. (Tr. 656). Chest x-rays were also normal. (Tr. 668). Joseph Quinn, M.D., noted mild congestive heart failure. (Tr. 659, 667). On April 12, 2010, Plaintiff presented to St. Francis Hospital complaining of chest pain. (Tr. 704). A physical examination of his chest was unremarkable. (Tr. 705). Extensive blood work up was performed, which yielded no results, and he was prescribed Darvocet, which is generally used to treat mild to moderate pain. (Tr. 779-11). During

the relevant period, Plaintiff followed up with a cardiologist, who noted that his edema had resolved. (Tr. 672). In July, August, and September 2010, Plaintiff denied any chest pain. (Tr. 640, 647, 649). Plaintiff returned to Easley on December 5, 2010, complaining of mild chest pain. (Tr. 675). He denied shortness of breath, nausea, vomiting, cough, fatigue, anxiety, syncope, palpitations, back pain, headache, dizziness, neck pain, altered vision, altered speech, altered coordination, lethargy, a suspected foreign body, abdominal pain, fever, chills, weight gain, hemoplysis, dysuria, diarrhea, or blood in his stool. (Tr. 675). A workup, including chest x-rays, an echocardiogram, and blood work, revealed no significant abnormalities. (Tr. 676-77). He was diagnosed with Pleuritic chest pain, prescribed 12 tabs of Percocet, and discharged. (Tr. 677). On November 30, 2011, it was noted that Plaintiff claimed to have been hospitalized for congestive heart failure in 2010. (Tr. 773). At that time, questionable congestive heart failure and chronic pancreatitis were noted by Dr. William Anderson.

(C) Pancreatitis

On February 7, 2010, prior to the relevant period, Plaintiff presented to Sundar Natarajan, M.D., at St. Francis Hospital, complaining of nagging abdominal pain that had persisted since he had his gallbladder removed in December of 2009. (Tr. 479-82, 733-34). An MRI was performed, and Plaintiff's pancreas was unremarkable. (Tr. 520). Lab work performed did not support a diagnosis of pancreatitis. (Tr. 528). On April 4, 2010, Plaintiff presented for a follow-up regarding his abdominal pain, claiming that it was caused by his pancreas. (Tr. 542-43). A physical examination was unremarkable. (Tr. 542). Hepatitis C was ruled out as a cause of his abdominal pain. (Tr. 543). Isaac Gaines, M.D., stated that the objective findings only supported a diagnosis of Gastroesophageal Reflux Disease ("GERD"). (Tr. 543). Dr. Gaines, a gastroenterologist, stated that a CT scan

"showed no evidence of any pancreatic disease." Id. Furthermore, Dr. Gaines denied Plaintiff's request for a prescription for narcotic pain medication because there was "no objective evidence of a disease process at this time." Id. During the relevant period, on July 10, Plaintiff reported to Dr. Brown that he had suffered a pancreatic attack three weeks prior. (Tr. 590). Plaintiff denied any abdominal pain on October 7, 2010 (Tr. 654) and December 5, 2010. (Tr. 675).

## VI. DISCUSSION AND ANALYSIS

Step two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

    (1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2)    Capacities for seeing, hearing, and speaking;
    (3)    Understanding, carrying out, and remembering simple instructions;
    (4)    Use of judgment;
    (5)    Responding appropriately to supervision, co-workers and usual work situations; and
    (6)    Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (emphasis in original) (internal quotation marks omitted).

At step two, the ALJ found that Plaintiff had the following severe impairments: status post three back surgeries, hepatitis C and GERD. The ALJ concluded that "claimant's allegations of pancreatitis and heart problems to be non-medically determinable as there is no medical evidence in the record containing either as a diagnosis." (Emphasis added). In reaching this conclusion, the ALJ indicated that "Dr. Gaines noted that there is no evidence that the claimant has any pancreatic disease. Additionally, a stress test from Baptist Easley Hospital showed normal wall motion, no evidence of stree induced ischemia, and an ejection fraction of 53%."

Plaintiff argues that there is medical evidence in the records of pancreatitis and/or heart problems. Specifically, Plaintiff asserts that treating physician Cecil Y. Brown, M.D., provides that the Claimant has a "Secondary disabling diagnosis" of pancreatitis. (Tr. 567). In addition, Plaintiff argues that there is evidence including several hospital visits for pancreatitis and two for heart/chest pain problems as follows:

| | |
|---|---|
| 12/20/09 – 12/23/09: | Hospital stay – Plaintiff presented to the emergency room with abdominal pain, nausea and vomiting and rectal bleeding. He was diagnosed with pancreatitis and chronic pain (Tr. 474-476). |
| 12/27/09: | Hospital admission for abdominal pain, intractable nausea and vomiting, anxiety (same symptoms as one week before). He was diagnosed with Grade B esophagitis (Tr. 505-509). |
| 2/7/10 – 2/11/10: | Hospital admission for intractable nausea and vomiting, pain (same symptoms as in December). (Tr. 734). |
| 3/25/10: | Emergency room visit for abdominal pain (Tr. 692). |
| 3/28/10: | Emergency room visit for abdominal pain, constant since Christmas. He was diagnosed with abdominal pain and pancreatitis (Tr. 533). |
| 4/12/10: | Emergency room visit for angina (Tr. 704). |
| 6/3/10: | Dr. Brown notes a secondary disabling diagnosis of pancreatitis (Tr. 567). |

10

| | |
|---|---|
| 7/1/10: | Dr. Brown's notes document a pancreatitis attack "about 3 weeks ago" (Tr. 590). |
| 10/7/10 – 10/8/10: | Hospital stay for congestive heart failure and peripheral edema (Tr. 659, 667). |
| 11/15/10: | He was referred to a cardiologist for evaluation (Tr. 672). |
| 12/5/10: | Emergency room visit for chest pain and edema – He was diagnosed with pleuritic chest pain (Tr. 677). |

Here, Plaintiff highlights numerous records during and around the relevant time period that Plaintiff contends support his position that his claimed pancreatitis and heart problems are medically determinable impairments. Plaintiff argues that although he was not given a pancreatitis diagnosis every time he went to the hospital for abdominal pain, his symptoms were identical to occasions close in time when he was diagnosed with pancreatitis. Plaintiff asserts a similar argument for Plaintiff's claimed congestive heart failure, i.e. that he was diagnosed with congestive heart failure in October and then presented with the same symptoms in December.

Although the ALJ provided specific reasons for finding Plaintiff's alleged impairments of pancreatitis and heart problems were not medically determinable impairments, there is arguably contradictory evidence in the record, which was not acknowledged or addressed by the ALJ. The ALJ's decision does not make clear whether he considered the records highlighted by Plaintiff and as such, this court is unable to discern whether the ALJ's decision is supported by substantial evidence.

Based on the foregoing, the court is constrained to conclude that this matter should be remanded for further consideration of Plaintiff's impairments at step two and the impact on the remaining sequential process. Furthermore, in light of the court's determination that this matter be remanded for further consideration, the court need not address Plaintiff's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n. 19 (3d Cir.2003)

(remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

### VII.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

**ORDERED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** to the Commissioner for further administrative action as set out above.

> Respectfully submitted,
>
> s/Thomas E. Rogers, III
> Thomas E. Rogers, III
> United States Magistrate Judge

September 16, 2014
Florence, South Carolina